## EMPLOYEE WELFARE BENEFIT PLAN

WHEREAS the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") requires that every employee benefit plan be established and maintained pursuant to a written instrument, and CUNA Mutual Insurance Society, CUMIS Insurance Society, Inc., CMCI Corporation, CUDIS Insurance Society, Inc. and CMCI Underwriters, Inc. (hereinafter "Employer" as to their respective Employees) have heretofor established a welfare benefit plan to provide group health insurance benefits to their eligible Employees (hereinafter "Plan");

NOW, THEREFORE, WITNESSETH that this instrument is made to evidence the establishment of the Plan and to set forth the terms and conditions pursuant to which the Plan shall be maintained which are as follows:

1. Name of Plan: CUNA Mutual Group Health Plan

2. Date Plan established: April 1, 1968

3. Effective date of this instrument: June 1, 1976

4. Plan Year: April 1 to March 31. The records of the Plan shall be kept on the basis of the Plan Year.

5. The "Employee Benefit Plan Administration Committee Procedures" dated as of January 1, 1976 and adopted by the Employers are incorporated in and made a part of the Plan.

6. Insurance contracts or policies purchased and maintained by the Employer from time to time, as described in Exhibit A, for the purpose of providing benefits under the Plan and any related applications and enrollment forms (all of the foregoing hereinafter "Policy") are incorporated in and made a part of the Plan.

7. Only those Employees of the Employer who meet and satisfy the eligibility requirements of the Policy and become and remain insured under the Policy shall be Participants in the Plan.

8. Benefits to be provided under the Plan shall be exclusively those provided under the Policy and in accordance with its terms, conditions and provisions, and this exclusive manner of providing benefits shall be the funding policy and method of the Plan.

9. The premiums and other costs of the Policy shall be paid by the Employer directly to the insurer or insurers involved. If Participant contributions toward such premiums are required, the amount and method of the Employer's collection of them shall be as specified in Exhibit A.

10. The persons eligible to receive benefits under the Plan shall be exclusively those eligible under the Policy and in accordance with its terms, conditions and provisions. Benefits shall be paid directly by the insurer or insurers involved to the entitled recipient.

11. Additional provisions, terms and conditions of the Plan may be established by use of Exhibit A. Definitions contained in this instrument shall also apply to Exhibit A, and provisions of this instrument may also be modified or eliminated, in whole or in part, by Exhibit A. Any Exhibit A to the Plan in effect from time to time shall be attached and is incorporated and made a part of the Plan.

12. The Employer may amend, modify, suspend, withdraw or terminate the Plan at any time, including any Exhibit A, and, by agreement with the insurer or insurers involved, any Policy.

13. Except as may otherwise be provided in regulations of the Secretary of Labor, all assets of the Plan shall be distributed to the Employer upon its termination.

14. The Plan is intended to meet the requirements of ERISA and regulations issued thereunder, and it shall be so construed and interpreted. Any provisions of the Plan inconsistent with or contrary to ERISA or such regulations shall be void and unenforceable without effect on any other provisions.

IN WITNESS WHEREOF, the Employers, pursuant to authority of their Boards of Directors, have hereunto caused these presents to be signed and attested by its undersigned officers on the date first set forth above.

(CORPORATE SEAL)

CUNA Mutual Insurance Society

By _____
                    President

Attest: _____
              Assistant Secretary

(CORPORATE SEAL)

CUMIS Insurance Society, Inc.

By _____
                    President

Attest: _____
              Assistant Secretary

PL - COMP 000002

(CORPORATE SEAL)

(CORPORATE SEAL)

(CORPORATE SEAL)

CMCI Corporation

By _____
                              President

Attest: _____
              Assistant Secretary

CUDIS Insurance Society, Inc.

By _____
                              President

Attest: _____
              Assistant Secretary

CMCI Underwriters, Inc.

By _____
                              President

Attest: _____
              Assistant Secretary

CUNA MUTUAL

RETIREE HEALTH

PLAN DOCUMENT

EFFECTIVE May 1, 1995

[ogc89870B\727.em]

PL - COMP 000004

TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ 2

ESTABLISHED AND EXECUTED ........................................................................... 4

ARTICLE I                              PURPOSE OF PLAN................................. 7

ARTICLE II                             DEFINITIONS ....................................... 7
Benefit. ........................................................................................................................ 7
Code        7
Dependent.................................................................................................................... 7
Effective Date.............................................................................................................. 7
Employer ..................................................................................................................... 7
Insurer.  7
Participant.................................................................................................................... 7
Plan      8
Plan Administrator ...................................................................................................... 8
Plan Year .................................................................................................................... 8
Qualified Retiree ......................................................................................................... 8
Retiree Health Plan ..................................................................................................... 8

ARTICLE III                    ELIGIBILITY AND COVERAGE DATES .............. 9
3.1      Participation - Eligibility ................................................................................ 9
3.2      Evidence of Insurability .................................................................................. 9
3.3      Cessation of Participation ............................................................................... 9

ARTICLE IV               DESCRIPTION OF OPTIONAL BENEFITS................ 11
4.1      Benefit Options ............................................................................................. 11
4.2      Description of Optional Benefits.................................................................... 11
4.4      Election Procedure ........................................................................................ 11
4.5      Failure to Return Election Forms ................................................................... 11
4.6      Automatic Termination of Election ................................................................ 11
4.7      Maximum Elective Contributions .................................................................. 11
4.8      Mail Order Prescription Drug Service ............................................................ 11

ARTICLE V                              FUNDING .......................................... 14
5.1      Premium........................................................................................................ 14
5.2      Sharing of Premium....................................................................................... 14

ARTICLE VI                     ADMINISTRATION OF PLAN ........................... 15
6.1      Plan Administrator ........................................................................................ 15
6.2      Examination of Records ................................................................................ 15
6.3      Reliance on Tables, etc. ................................................................................ 15
6.4      Error in Fact ................................................................................................. 15
6.5      Nondiscriminatory Exercise of Authority ...................................................... 16
6.6      Indemnification of Administrator ................................................................... 16
6.7      No Guarantee of Tax Consequences .............................................................. 16

[ogc:8967\B\727.cn]

2

PL - COMP 000005

6.8     Explanation of Benefits ........................................................................................................ 16
6.9     Information to be Furnished .................................................................................................. 16

ARTICLE VII                              MISCELLANEOUS ................................................................ 17
7.1     Plan Termination and Changes .............................................................................................. 17
7.2     Plan not a Contract ................................................................................................................ 17
7.3     Conformity with Governmental Regulation .......................................................................... 17

ARTICLE VIII                             APPEAL PROCEDURE ......................................................... 18
8.1     Notification Period ................................................................................................................ 18
8.2     Notification of Declination .................................................................................................... 18
8.3     Reasonable Opportunity for Review ..................................................................................... 18
8.4     Decision Process ................................................................................................................... 18
8.5     Dispute Resolution ................................................................................................................ 19

ARTICLE IX                               EXHIBIT A ......................................................................... 19

[cog:8987080727.en]

PL - COMP 000006

EMPLOYEE WELFARE BENEFIT PLAN
ESTABLISHED AND EXECUTED

WHEREAS the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") requires that every employee benefit plan be established and maintained pursuant to a written instrument, and CUNA Mutual Insurance Society (hereinafter "Employer") has heretofore established and executed a welfare benefit plan to provide benefits to its retired eligible Employees (hereinafter "Plan").

NOW, THEREFORE, WITNESSETH that this instrument is made to evidence the establishment of the Plan and to set forth the terms and conditions pursuant to which the Plan shall be maintained which are as follows:

1.    Name of Plan: CUNA MUTUAL RETIREE HEALTH PLAN

2.    Date Plan established:  May 1, 1995.

3.    Effective date of this instrument:  May 1, 1995.

4.    Plan Year:  May 1, 1995 to December 31, 1995 and every January 1 to December 31 thereafter.   The records of the Plan shall be kept on the basis of the Plan Year.

5.    The "Employee Benefit Plan Administration Committee Procedures" dated as of January 1, 1976 and thereafter and adopted by the Employers are incorporated in and made a part of the Plan.

6.    The insurance contracts or policies purchased and maintained by the Employer from time to time, as described in Exhibit A, for the purpose of providing benefits under the plan and any related applications and enrollment forms (all of the foregoing hereinafter "Policy") are incorporated in and made a part of the Plan.

7.    Benefits to be provided under the Plan shall be exclusively those provided under the policies in accordance with their terms, conditions and provisions, and this exclusive manner of providing benefits shall be the funding policy and method of the Plan.

8.    Participant contributions toward premium or contributions to the Plan and the amount and method of the Employer's collection of them shall be as specified in the Plan.

9.    The persons eligible to receive benefits and methods of benefit payment under the Plan shall be exclusively those eligible under the Plan and policies and in accordance with their terms, conditions and provisions.

10.    The Employer expects the Plan to be permanent, but since future conditions affecting the employer cannot be anticipated or foreseen, the Employer must necessarily and does hereby reserve the right to amend, modify or terminate the Plan including all or any part of Exhibit A at any time by action of its Board.  The Employer may also make any modifications or amendments to the Plan retroactively, if necessary or appropriate, to qualify or maintain the Plan as a plan meeting the requirements of the Internal Revenue Code of 1954 or the Act as now in effect or hereafter amended or the regulations issued thereunder.  No amendment of the Plan shall cause any part of the Plan to be used for, or diverted to purposes other than for the exclusive benefit of the Participants or their dependents covered by the Plan

11.    The Plan is intended to meet the requirements of ERISA and regulations issued thereunder, and it shall be so construed and interpreted.  Any provisions of the Plan inconsistent with or contrary to ERISA or such

[agc8987\JB\727.em]

4

PL - COMP 000007

regulations shall be void and unenforceable without effect on any other provisions.

IN WITNESS WHEREOF, the Employer, pursuant to the authority of its Board of Directors, has hereunto caused this Plan to be established and executed in its behalf and by its undersigned officers on the _____ day of _____, 1995.

CUNA Mutual Insurance Society

By: _____
                                   President                      (CORPORATE SEAL)

Attest: _____
                        Assistant Secretary


CUMIS Insurance Society, Inc.

By: _____
                                   President                      (CORPORATE SEAL)

Attest: _____
                        Assistant Secretary


CUNA Mutual Investment Corporation

By: _____
                                   President                      (CORPORATE SEAL)

Attest: _____
                        Assistant Secretary


MEMBERS Life Insurance Company

By: _____
                                   President                      (CORPORATE SEAL)

Attest: _____
                        Assistant Secretary

[ogc89871B\727.cm]

5

PL - COMP 000008

CUNA Mutual Insurance Agency, Inc.

By: _____

                                President                   (CORPORATE SEAL)

Attest: _____

                         Assistant Secretary

CUNA Mutual Financial Services Corp.

By: _____

                                  President                   (CORPORATE SEAL)

Attest: _____

                         Assistant Secretary

Century Investment Management Co.

By: _____

                                  President                   (CORPORATE SEAL)

Attest: _____

                         Assistant Secretary

[cgc8987NB\727.cm]

PL - COMP 000009

| ARTICLE I | PURPOSE OF PLAN |
|---|---|

The purpose of this Plan is to provide group health care coverage to Retirees and Dependents. It is the intention of the Employer that the Plan qualify as an insured welfare benefit plan providing for group health coverage for medical care costs. The Benefits provided under the Plan will be eligible for exclusion from the Retiree's gross income under Section 106 of the Code.

| ARTICLE II | DEFINITIONS |
|---|---|

**2.1   Definitions**

Unless indicated otherwise, the following terms and phrases when capitalized and used herein have the meanings set forth below:

**Benefit.**  The amount paid or services provided under the certificate elected by the Participant for medical care received by a Participant or Dependent.

**Code.**  The Internal Revenue Code of 1986, as amended from time to time.  Reference to any section or subsection of the Code includes reference to any comparable or succeeding provisions of any legislation which amends, supplements or replaces such section or subsection.

**Dependent.**  The Participant's spouse and unmarried children (including stepchildren and adopted children) as defined and covered in each of the group health insurance policies in Exhibit A or by the health care service organization providing coverage.

**Effective Date.**  May 1, 1995.

**Employer.**  One of the following:        CUNA Mutual Insurance Society;
                                            CUMIS Insurance Society, Inc.;
CUNA Mutual Insurance Agency, Inc. prior to 02/01/94 known as CMCI Corporation;
                                            MEMBERS Life Insurance, Inc.;
                                            CUNA Mutual Investment Corporation;
CUNA Mutual Financial Services Corporation; or
                                            Century Investment Management Co.

**Insurer.**  The organization which provides the insurance or health care service coverage to Participants and their Dependents under the terms of this Plan.

**Participant.**  Any individual who is an Qualified Retiree.  The term, Participant, also includes those covered as a result of Wisconsin Conversion or the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) and those Dependent children for whom a Qualified Child Medical Support Order has been approved by the Employer according to procedures established by the Employer as required by the Omnibus Budget Reconciliation Act of 1993.

[cgc8987\III\727.cnn]

7

**Plan.** The CUNA Mutual Insurance Society Retiree Health Plan as set forth herein, together with any and all amendments, attachments and supplements hereto.

**Plan Administrator.** The members of the Employee Benefit Plan Administration Committee (EBPAC) as may be appointed from time to time by the Employer to supervise the administration of the Plan.

**Plan Year.** The period beginning on the Effective Date and ending on December 31, 1994, and the 12-month period ending on each December 31 thereafter.

**Qualified Retiree.** Any individual who meets the eligibility requirements out lined in Section 3.1 (1).

**Retiree Health Plan.** The CUNA Mutual Insurance Society Retiree Health Plan, Plan No. 537, as amended from time to time.

## 2.2     Terminology and Usage

Except where otherwise indicated by the context, any masculine terminology used herein shall also include the feminine and vice versa, and the definition of any term herein in the singular shall also include the plural, and vice versa.

{ogd0/87UB\727.em}

8

PL - COMP 000011

| ARTICLE III | ELIGIBILITY AND COVERAGE DATES |
|---|---|

**3.1    Participation - Eligibility**

Upon termination of employment each former employee is eligible to participate in the Plan if they

(1)     had participated in the Employer's group medical care plan for employees on the day immediately prior to their termination of employment and attained

(a)     at least age 65 with at least 5 years of continuous service;

(b)     age 60 - 64 with at least 10 years of continuous service;

(c)     age 55 - 59 with at least 15 years of continuous service; or

(d)     age 50 - 54 with at least 20 years of continuous service; or

(2)     had participated in the Employer's group medical care plan for employees prior to January 1, 1996 and became eligible for COBRA or Wisconsin Conversion.

Each child for whom a Qualified Medical Support Order is approved by the Employer becomes eligible to participate upon the date that approval is issued.

The terms of the policy or certificate will determine the effective date and termination date of the Participant's and or Dependent's coverage.

**3.2    Evidence of Insurability**

At the time of initial election, the Participant or their Dependent will have to provide evidence of insurability to the Insurer and may be declined for coverage, if the Participant had previously not been covered under the Employer's medical care coverage during the period immediately prior to their retirement.

During an Retiree's initial eligibility period, the Participant may choose coverage without providing evidence of insurability if during the period immediately prior to their retirement, they had coverage under the Employer's medical care coverage for active employees

At any other time a choice to elect retiree medical care coverage will require the Participant or the Dependent to provide evidence of insurability.

The terms and provisions of the policy or certificate will determine the type and amount of coverage available.

**3.3    Cessation of Participation**

A Participant will cease to be a Participant as of the earlier of

(1)     the date on which the Plan terminates;

[ogc8987NEV727.cm]

9

(2)     the date on which he or she ceases to be a Retiree who is eligible to participate under Section 3.1;

(3)     the date on which a COBRA Participant ceases to be eligible for COBRA;

(4)     the date on which a Qualified Medical Support Order ceases to be effective or allows termination of participation whichever occurs first;

(5)     the first of the month following the date on which a service fee or premium payment is due and unpaid; or

(6)     for COBRA Participants, January 1, 1996.

A former Participant returning from a Uniformed Services tour of duty will be reinstated to all benefits or coverages provided under the Plan according to the requirements of the Uniformed Services Employment and Reemployment Act (USERRA), if the facts of the former Participant's departure, tour and reapplication also meet the requirements of USERRA. For purposes of the preceding sentence, the term Uniformed Services shall have the meaning given to it under USERRA.

[ogc8987\B\727.en]

10

PL - COMP 000013

| ARTICLE IV | DESCRIPTION OF OPTIONAL BENEFITS |
|---|---|

**4.1    Benefit Options**

Each Participant may choose under this Plan to receive group health insurance coverage and mail order prescription drug service.

**4.2    Description of Optional Benefits**

The types and amounts of benefits available under the Plan described in Section 4.1, the requirements for participating in such option, and the other terms and conditions of coverage and benefits under such option are as set forth from time to time in the group insurance contracts and service agreements that constitute (or are incorporated by reference in) the Plan. The benefit descriptions in such contracts, as in effect from time to time, are hereby incorporated by reference into this Plan.

**4.4    Election Procedure**

At retirement, the Employer shall provide one or more written election forms to each Participant. The election forms shall be effective as of the first day of the next month. Each election form must be completed and returned to the Employer on or before such date as the Plan Administrator shall specify, which date shall be no later than the beginning of the first period for which the Participant's election will apply.

**4.5    Failure to Return Election Forms**

A Participant's failure to return a completed election form under Section 4.4 to the Employer on or before the specified due date, shall constitute an election not to receive this insurance coverage.

**4.6    Automatic Termination of Election**

Any election made under this Plan (including an election made through inaction under Section 4.5) shall automatically terminate on the date on which the Participant ceases to be a Participant in the Plan, although coverage or benefits under the Plan in question may continue if and to the extent provided by such plan.

**4.7    Maximum Elective Contributions**

The maximum amount of elective contributions under the Plan for any Participant shall be the amount set forth on the Enrollment Form, as updated from time to time pursuant to Article V.

**4.8    Mail Order Prescription Drug Service**

Every Participant or Dependent in the Plan shall be eligible to receive a Benefit under the Plan for all Mail Order Prescription Drug expenses payable by such Participant or Dependents. The Benefit will be payment of the invoice received by the Employer subject to the limitations and noncovered Items listed in this section.

Each Participant or Dependent who desires to receive a Benefit under the Plan for Mail Order Prescription Drug expenses shall obtain their outpatient prescriptions from the independent pharmacy contracted with by the

[cgc8987AB\727.cm]

11

Employer.

If a Participant or Dependent receives a prescription for a noncovered item under this Plan, the Participant or Dependent will be billed directly by the independent pharmacy.

The following charges will not be covered under this Plan even if the Participant or Dependent receives the item directly from the Independent Pharmacy:

(1)   Nonprescription drugs which by law do not require a written prescription other than insulin and the needles and syringes for the injection of insulin.  Benefits for needles and syringes for the injection of insulin will only be covered to the extent they will be used for the amount of insulin purchased and are in fact purchased when the insulin is purchased.

(2)   Charges for the administration or injection of any drug.

(3)   Therapeutic devices or appliances, including support garments, and other nonmedicinal substances, regardless of intended use.

(4)   Prescription which a Participant or Dependent is entitled to receive without charge under any Workers Compensation Laws, or any municipal, state or federal program.

(5)   Drugs labeled "Caution - limited by Federal Law to investigational use" or experimental drugs even though a charge is made to the Participant or Dependent.

(6)   Immunization agents, biological sera, blood or blood plasma.

(7)   Medication which is to be taken by or administered to a Participant or Dependent, in whole or in part, while a patient in a hospital, rest home, sanitarium, extended care facility, convalescent hospital, nursing home or similar institution.

(8)   Any prescription refilled in excess of the number specified by the physician, or any refill dispensed after one year from the physician's original order.

(9)   Contraceptives, EXCEPT oral contraceptives.

(10)  Prescription charges incurred after the Individual became a Participant in this Plan but not from the independent pharmacy.

(11)  Prescription charges incurred after the Dependent became covered under this Plan but not from the independent pharmacy.

(12)  Charges incurred before or after the Participant or Dependent is no longer eligible to participate in this Plan.

[cgs2987\B\727.cn]

12

PL - COMP 000015

The following dispensing limitations apply to the Mail Order Prescription Drug Benefit even if the Participant or Dependent receives the item directly from the independent pharmacy.  No Benefit will be paid:

(1)     beyond a 90 day supply; or

(2)     for a prescription that does not conform with applicable Federal and state law.

The following Benefit limitation applies to oral contraceptives obtained from the Independent Pharmacy.

(1)     By ordering **brand-name** oral contraceptives from the independent pharmacy, a Participant or Dependent will be responsible for a $5.00 copayment per prescription payable to the independent pharmacy.  The Benefit will be the remaining balance.

(2)     By ordering **generic** oral contraceptives from the independent pharmacy, a Participant or Dependent will not be responsible for a copayment.

The following Benefit limitation applies to any prescription item covered under this Plan.  A copayment or deductible amount designated by the Employer on the appropriate annual Enrollment Form will be applied on the purchase of each prescription.  The copayment or deductible will be the responsibility of the Participant to pay.

[oge8987\IBU27.em]

13

PL - COMP 000016

---

ARTICLE V                                    FUNDING

---

**5.1    Premium**

For Participants, the Employer shall contribute toward the cost of the group medical care coverage elected under this Plan according to the Enrollment Form.

For those covered as a result of COBRA, the Participant is fully responsible for the cost of their medical care coverage.

Non-payment of a required premium by a Participant will cause termination of the insurance coverage.

**5.2    Sharing of Premium**

Participants electing mail order prescription drug coverage will pay the entire cost of their pro-rata share of the service fee monthly.

Participants receiving disability payments from any of the CUNA Mutual Insurance Society Long Term Disability Plans, will continue to share the cost of the premiums payable on behalf of the Participant and Dependents.

For the 12 month period starting with the date benefits paid under any of the CUNA Mutual Insurance Society Long Term Disability Plans began, the Participant's portion of the premium will remain the same as the portion paid by the Participant prior to receiving disability payments.

At the end of the 12 month period in paragraph 2 of 5.2 above, if the Participant has been employed by one of the Employers for a minimum of six years prior to the date the Participant began receiving benefit payments from any of the CUNA Mutual Insurance Society Long Term Disability Plans, the Participant's portion of the premium will be 40%.

Any period during which a Participant is not receiving benefits under any of the CUNA Mutual Insurance Society Long Term Disability Plans as a result of the Participant being employed pursuant to a rehabilitation, progressive disability or partial re-employment provision of any of the CUNA Mutual Insurance Society Long Term Disability Plans will be treated as a period during which the Participant is receiving payments under the CUNA Mutual Insurance Society Long Term Disability Plans. Participants receiving disability payments from any of the CUNA Mutual Insurance Society Long Term Disability Plans, will continue to share the cost of the premiums payable on behalf of the Participant and Dependents.

After the 12 month period in paragraph 2 of 5.2, the Participant's portion of the premium will be the entire premium as billed by the Insurer if the Participant is not an Employee receiving benefit payments from any of the CUNA Mutual Insurance Society Long Term Disability Plans who was employed by one of the Employers for at least a minimum of six years prior to the date the Participant began to receive payments from any of the CUNA Mutual Insurance Society Long Term Disability Plans.

[ogc8987f(B1V727.cm)]

PL - COMP 000017

| ARTICLE VI | ADMINISTRATION OF PLAN |
|---|---|

### 6.1   Plan Administrator

The administration of the Plan shall be under the supervision of the Plan Administrator as indicated in the resolution adopted from time to time by the Board of Directors of the Employer. It shall be a principal duty of the Plan Administrator to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them. The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

(1)   To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan;

(2)   To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;

(3)   To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

(4)   To appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan; and

(5)   To allocate and delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan, any such allocation, delegation or designation to be in writing.

Notwithstanding the foregoing, any claim which arises under the Plan shall not be subject to review under this Plan, and the Administrator's authority under this Section 5.1. shall not extend to any matter as to which an administrator under any such other plan is empowered to make determinations under such plan.

### 6.2   Examination of Records

The Plan Administrator will make available to each Participant such of its records under the Plan as pertain to the Participant, for examination at reasonable times during normal business hours.

### 6.3   Reliance on Tables, etc.

In administering the Plan, the Plan Administrator will be entitled to the extent permitted by law to rely conclusively on all tables, valuations, certificates, opinions and reports which are furnished by, or in accordance with the instructions of, the third-party administrators of the Plan or by accountants, counsel or other experts employed or engaged by the Administrator.

### 6.4   Error in Fact

The Plan Administrator may take appropriate actions to correct an administrative error that can be demonstrated to a reasonable degree of certainty to be an action that is not consistent with all relevant facts under the

[og:8987HBV727.en]

15

PL - COMP 000018

circumstances when discovered by the Plan Administrator.

**6.5    Nondiscriminatory Exercise of Authority**

Whenever, in the administration of the Plan, any discretionary action by the Plan Administrator is required, the Plan Administrator shall exercise its authority in a nondiscriminatory manner so that all persons similarly situated will receive substantially the same treatment.

**6.6    Indemnification of Administrator**

The Employer agrees to indemnify and to defend to the fullest extent permitted by law any employee serving as the Plan Administrator or as a member of a committee designated as Administrator (including any employee or former employee who formerly served as Plan Administrator or as a member of such committee) against all liabilities, damages, costs and expenses (including attorneys' fees and amounts paid in settlement of any claims approved by the Employer) occasioned by any act or omission to act in connection with the Plan, if such act or omission is in good faith.

**6.7    No Guarantee of Tax Consequences**

Neither the Plan Administrator nor the Employer makes any commitment or guarantee that any amounts paid to or for the benefit of a Participant under the Plan will be excludable from the Participant's gross income for federal or state income tax purposes, or that any other federal or state tax treatment will apply to or be available to any Participant.  It shall be the obligation of each Participant to determine whether each payment under the Plan is excludable from the Participant's gross income for federal and state income tax purposes, and to notify the Employer if the Participant has reason to believe that any such payment is not so excludable.

**6.8    Explanation of Benefits**

The Insurer shall submit to each Participant receiving Benefits under the Plan during a Plan Year an explanation of the amount of Benefits received by such Participant.

**6.9    Information to be Furnished**

Participants shall provide the Employer and Plan Administrator with such information and evidence, and shall sign such documents, as may reasonably be requested from time to time for the purpose of administration of the Plan.

[ogc8987dB\727.cm]

16

PL - COMP 000019

| ARTICLE VII | MISCELLANEOUS |
|---|---|

**7.1     Plan Termination and Changes**

The Plan may at any time be amended or terminated by a written instrument signed by the President of the Employer and approved by the Board of Directors. From time to time, the Plan Administrator shall update the Enrollment Form to show the maximum amount of contributions.

**7.2     Plan not a Contract**

Neither the establishment of the Plan nor any amendment thereof, nor the payment of any benefits, will be construed as giving to any Participant or other person any legal or equitable right against the Employer or Plan Administrator, except as provided herein.

This Plan shall not be deemed to constitute a contract between the Employer and any Participant or to be a consideration or an inducement for the employment or participation in the Plan of any Participant. Nothing contained in the Plan shall be deemed to give any Participant the right to be retained in the service of the Employer or to interfere with the right of the Employer to discharge any Participant at any time regardless of the effect which such discharge shall have upon the Participant.

**7.3     Conformity with Governmental Regulation**

This Plan shall be construed and enforced according to the laws of the state to the extent not preempted by any federal law.

[ogc89870JB\727.en]

PL - COMP 000020

| ARTICLE VIII | APPEAL PROCEDURE |
| --- | --- |

**8.1     Notification Period**

If a payment is wholly or partially denied, notice of the decision, in accordance with Section 6, shall be furnished to the Participant within a reasonable period of time, not to exceed sixty (60) days after receipt of the claim by the Plan Administrator, unless special circumstances require an extension of time for processing the payment. If such an extension of time is required, written notice of the extension shall be furnished to the Participant prior to the termination of the initial sixty (60) day period. In no event shall such extension exceed a period of sixty (60) days from the end of such initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date on which the Plan Administrator expects to render a decision.

**8.2     Notification of Declination**

The Plan Administrator shall provide every Participant who is denied a payment for Benefits a written notice setting forth, in a manner calculated to be understood by the Participant, the following:

(1)      a specific reason or reasons for the denial;

(2)      specific reference to pertinent Plan or policy provisions upon which the denial is based;

(3)      a description of any additional material or information necessary for the Participant to establish a right to payment and an explanation of why such material or information is necessary; and

(4)      an explanation of the Plan's payment review procedure, as set forth below in parts 7.3 and 7.4 hereof.

**8.3     Reasonable Opportunity for Review**

The purpose of the review procedure set forth in this Section is to provide a procedure by which a Participant, under the policy, may have reasonable opportunity to appeal a denial of a payment to the appeals committee for a full and fair review. To accomplish that purpose, the Participant, or the duly authorized representative may:

(1)      request review upon written application to the Plan Administrator who will acknowledge receipt of the request within ten (10) days;

(2)      review pertinent Plan documents during the forty five (45) day period following receipt by the Plan Administrator of the written application for a review; and

(3)      submit issues and comments in writing.

**8.4     Decision Process**

Decision on review of a denied payment shall be made by the Plan Administrator within 30 days of the receipt of all the information necessary to make a determination.

[ogc8987NB\727.en]

18

PL - COMP 000021

8.5    Dispute Resolution

If a dispute arises with respect to any matter under the Plan, the Employer may refrain from taking any other or further action in connection with the matter involved in the controversy until the dispute has been resolved.

**ARTICLE IX**                                   **EXHIBIT A**

[ogc:8987LB0727.cm]

19

PL - COMP 000022

AMENDMENT NUMBER ONE
TO THE
CUNA MUTUAL INSURANCE SOCIETY RETIREE HEALTH PLAN

CUNA Mutual Insurance Society, a Wisconsin corporation, hereby amends the CUNA Mutual Insurance Society Retiree Health Plan as follows:

1.  Effective January 1, 1997, wherever the term "CUNA Mutual Financial Services Corporation" appears it is deleted in its entirety.

2.  Effective January 1, 1997, wherever the term "Century Investment Management Co" appears it is deleted and replaced in its entirety with the term "CIMCO Inc.".

3.  Effective September 21, 2000, wherever the term "CIMCO Inc." appears it is deleted and replaced in its entirety with the term "MEMBERS Capital Advisors, Inc.".

4.  Effective January 1, 2000, wherever the term "insurance coverage" appears it is deleted and replaced in its entirety with the term "Insurance coverage or self-funded coverage, if available,".

5.  Effective September 1, 1999, the benefits available under the Plan can also be provided on a self-funded basis.

    The definition of "Benefit" in Section 2.1 is deleted and replaced in its entirety with the following:

    **Benefit.**  The amount paid under the benefit description described in Exhibit A.

    Any reference to insurance in any of the Plan includes the self-insurance under the self-funded benefits.

IN WITNESS WHEREOF, the Employer, pursuant to the authority of its Board of Directors, has hereunto caused this amendment to be executed in its behalf by it undersigned officers on this _____ day of _____, 2000.

CUNA Mutual Insurance Society                    (CORPORATE SEAL)

CUMIS Insurance Society, Inc.                    (CORPORATE SEAL)

CUNA Mutual Investment Corporation               (CORPORATE SEAL)

MEMBERS Life Insurance Company                   (CORPORATE SEAL)

CUNA Mutual Insurance Agency, Inc.               (CORPORATE SEAL)


BY: _____                  _____
        Michael Kitchen, President

Attest: _____
        Assistant Secretary


MEMBERS Capital Advisors, Inc.                   (CORPORATE SEAL)


BY: _____                  _____
        Michael Daubs, President


Attest: _____
        Assistant Secretary

C:\DOCUME~1\agc9135\LOCALS~1\Temp\notesF8B682\1784.doc

AMENDMENT NUMBER TWO
TO THE
CUNA MUTUAL INSURANCE SOCIETY RETIREE HEALTH PLAN

CUNA Mutual Insurance Society, a Wisconsin corporation, hereby amends the Retiree Health Plan as follows:

Effective January 1, 2002, active employees on or after January 1, 2002, of CUNA Mutual General Agency of Texas, Inc., CUNA Mutual Mortgage Corporation, CUNA Mutual Business Services, Inc. and Stewart Associates Incorporated may participate in this Plan if they satisfy the eligibility terms of Section 3.1

Effective January 1, 2002, the definition of Employer is deleted and replaced in its entirety with the following:

**Employer.** One of the following: CUNA Mutual Insurance Society
CUMIS Insurance Society, Inc.
CUNA Mutual Insurance Agency, Inc.
MEMBERS Life Insurance, Inc.
CUNA Mutual Investment Corporation
MEMBERS Capital Advisors, Inc.
CUNA Mutual General Agency of Texas, Inc.
CUNA Mutual Mortgage Corporation
CUNA Mutual Business Services, Inc.
Stewart Associates Incorporated

Effective January 1, 2003, the following Section 7.3 shall be added:

**7.3    Confidentiality**
The Plan will not disclose Plan Participants' protected health information, as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), to the Employer or any other entity except as allowed or required under HIPAA and the regulations thereunder.

The Plan will maintain access to protected health information to Participants and record keeping protocols as required by HIPAA and the regulations thereunder.

To the extent that Plan operations require disclosure of protected health information to the Employer, the Employer will certify to the Plan Administrator that the Employer will:
(a)    Not use or further disclose the protected health information other than as permitted by the Plan;
(b)    Use HIPAA compliant contracts with subcontractors or any other agent to whom the Employer provides protected health information;
(c)    Not use or disclose protected health information for employment related actions or in connection with any other employee benefit plan other than Component Plans 516 (Dental Plan), 518 (Employee Assistance Plan), 520 (Group Medical Care Plan), 525 (Medical Reimbursement Plan), 527 (Transplant Plan), and 528 (Vision Plan);

C:\DOCUME~1\ogc9135\LOCALS~1\Temp\notesF8B682\2047a.doc

(d)   Report any use or disclosure of protected health information that is inconsistent with the permitted uses or disclosure;

(e)   Maintain access to protected health information by Participants and government agencies and record keeping protocols as required by HIPAA and the regulations thereunder;

(f)   Restrict access to protected health information to employees with oversight responsibility for claims administration; and

(g)   Maintain a procedure for resolving any compliance issues.

Effective January 1, 2002, Section 8.4 is deleted and replaced in its entirety with the following:

**8.4   Decision Process**
Decision on review of a denied payment shall be made by the Employer as indicated in the attached Exhibit A.  The appeal will be reviewed by an individual or committee of the Employer that is not subordinate to the individual or committee that made the initial determination.

IN WITNESS WHEREOF, the Employer, pursuant to the authority of its Board of Directors, has caused this amendment to be executed on its behalf by its undersigned officers on this _____ day of _____, 2002.

CUNA Mutual Insurance Society                    (CORPORATE SEAL)

CUMIS Insurance Society, Inc.                    (CORPORATE SEAL)

CUNA Mutual Investment Corporation               (CORPORATE SEAL)

MEMBERS Life Insurance Company                   (CORPORATE SEAL)

CUNA Mutual Insurance Agency, Inc.               (CORPORATE SEAL)

CUNA Mutual Business Services, Inc.              (CORPORATE SEAL)

BY: _____             _____
        Michael B. Kitchen, President

Attest: _____
          Assistant Secretary

MEMBERS Capital Advisors, Inc.                   (CORPORATE SEAL)

BY: _____             _____
        Michael Daubs, President

Attest: _____
          Assistant Secretary

C:\DOCUME~1\ogc9135\LOCALS~1\Temp\notesF8B682\2047a.doc

PL - COMP 000025

CUNA Mutual General Agency of Texas, Inc.                    (CORPORATE SEAL)

Stewart Associates Incorporated                             (CORPORATE SEAL)

BY: _____                        _____
      Gary T. Kirkindoll, President

Attest: _____
      Assistant Secretary


CUNA Mutual Mortgage Corporation                            (CORPORATE SEAL)

BY: _____                        _____
      Daniel E. Meylink, Sr., President

Attest: _____
      Assistant Secretary

C:\DOCUME~1\bgc9135\LOCALS~1\Temp\notesF8B682\2047a.doc

PL - COMP 000026

CUNA MUTUAL

GROUP MEDICAL CARE PLAN

FOR RETIREES

Plan #537

As Amended And Restated Effective August 1, 2007

NOTE:   This document and the certificates, handbooks and guidebooks issued by the Insurer/Third Party Administrator constitute the Plan Document and Summary Plan Description.

PL - COMP 000027

## SECTION 1                    PURPOSE OF PLAN

The purpose of this Plan is to provide group health care coverage to eligible Retirees and Dependents. The Plan is a partially insured and partially self-insured welfare benefit plan providing for group health coverage. The Benefits provided under the Plan are intended to be excluded from the Retiree's gross income under Section 106 of the Code.

### EMPLOYER INFORMATION

| | |
|---|---|
| Name of Employer | CUNA Mutual Insurance Society |
| Address of Employer | 5910 Mineral Point Road |
| | Madison, WI 53701 |
| Telephone | (608) 231 – 8200 |
| FAX | (608) 236 – 8041 Call above telephone number prior to |
| faxing material | |
| Website | www.cunamutual.com |
| Employer Identification Number | 39-0230590 |

### PLAN INFORMATION

Plan Year Ending Date_____ 12/31 _____

Plan Number assigned by the Sponsor _____ 537 _____

Plan Administrator is the following:

Employee   Benefit   Plan   Administration   Committee ("EBPAC")
P.O. Box 391
5910 Mineral Point Road
Madison, WI 53701-0391

The Sponsor's Agent for Service of Legal Process is the following:

CUNA Mutual Insurance Society
Attn: Vice President, Total Rewards
P.O. Box 391
5910 Mineral Point Road
Madison, WI 53701-0391
(800) 356 – 2644

2

PL - COMP 000028

## SECTION 2            DEFINITIONS

**2.1    Definitions**

Unless indicated otherwise, the following terms and phrases when capitalized and used herein have the meanings set forth below:

**Annual Election Time.** A period identified annually by the Employer prior to the commencement of each Plan Year during which the Participants may change Plan providers, (but only to the same or lower level of Plan coverage) and/or add newly acquired Dependents.

**Benefit.** The benefits provided under the coverage elected by the Participant for medical care received by a Participant or Dependent.

**COBRA.** The group health plan continuation coverage rules under the Consolidated Omnibus Reconciliation Act of 1985, as amended from time to time.

**Code.** The Internal Revenue Code of 1986, as amended from time to time.

**Dependent.** The Participant's spouse, Domestic Partner (but only if such Domestic Partner was covered as a Dependent under a group medical plan of the Employer immediately before termination of the Employee's employment with the Employer) and unmarried children (including stepchildren, children for whom the Retiree has been granted legal guardianship and adopted children but excluding unadopted children of a domestic partner) as defined and covered in the insurance certificates, guidebooks and handbooks issued by the Insurer or Third Party Administrator.

**Domestic Partner.** An opposite sex or same sex unmarried domestic partner for whom the Participant has provided an affidavit/certification of domestic partnership and who:

(a)    is at least 18 years old;

(b)    is not related by blood;

(c)    is mentally competent to consent to a contract;

(d)    is not married to another person or part of another domestic partner relationship;

(e)    has been involved in an exclusive relationship, similar to marriage, at least 6 months;

3

PL - COMP 000029

(f)    intends to remain in the same exclusive relationship indefinitely; and

(g)    has shared permanent residence for at least 6 months prior to coverage.

**Employee.**  Any individual who is (a) employed on a non-temporary basis by the Employer, and (b) scheduled to work at least 20 hours per week. "Employee" does not include leased employees, independent contractors, temporary employees or individuals performing services for the Employer in Puerto Rico.  Any individual who is deemed by the Employer to be a leased employee, independent contractor or temporary employee (as evidenced by written contract and/or the Employer's payroll records) will not be considered an "Employee" for purposes of this Plan regardless of whether the individual is subsequently determined to be a common law employee by a court or other governmental body or agency.

**Employer.**  CUNA Mutual Insurance Society or an affiliated employer that maintains this Plan with the permission of CUNA Mutual Insurance Society.

**ERISA.**  The Employee Retirement Income Security Act of 1974, as amended from time to time.

**Insurer.**    The insurance company, health maintenance organization, or other entity which provides the insurance or health care service coverage to Participants and their Dependents under the terms of this Plan.

**Participant.**    Any Retiree who participates in the Plan in accordance with Section 3. "Participant" also includes individuals covered under the Plan as a result of COBRA (or state COBRA-like rules) and those Dependent children for whom a Qualified Child Medical Support Order has been approved by the Employer according to procedures established by the Employer.

**Plan.**  This CUNA Mutual Insurance Society Group Medical Care Plan for Retirees, Plan No. 537, as amended from time to time.

**Plan Administrator.**    The members of the Employee Benefit Plan Administration Committee (EBPAC) as may be appointed from time to time by the Employer to supervise the administration of the Plan.

**Plan Year.**  The 12-month period ending on each December 31.

**Retiree.**  Any former Employee of the Employer who meets the eligibility requirements outlined in Section 3 and who was not an employee of the Fort Worth Customer Operations Center.  Any individual who is deemed by the Employer to have been a leased employee, independent contractor or temporary employee of the Employer (as evidenced by a written contract and/or by the Employer's payroll records) will not be considered a

4

"Retiree" for purposes of this Plan regardless of whether the individual is subsequently determined to have been a "common law employee" by a court of law or other governmental body or agency.

### 2.2 Terminology and Usage

Except where otherwise indicated by the context, any masculine terminology used herein shall also include the feminine and vice versa, and the definition of any term herein in the singular shall also include the plural, and vice versa.

---

## SECTION 3   ELIGIBILITY AND COVERAGE DATES

---

### 3.1 Participation - Eligibility

Each former Employee of the Employer is eligible to participate in the Plan if he/she:

(1) was covered by the collective bargaining agreement with the Employer on the last day of employment, was at least age 50 with at least 10 years of service on September 1, 2005 and also met one of the following criteria on the last day of employment:

    (a) at least age 65 with at least 5 years of continuous service with the Employer; or

    (b) age 60 - 64 with at least 10 years of continuous service with the Employer; or

    (c) age 55 - 59 with at least 15 years of continuous service with the Employer; or

    (d) age 50 - 54 with at least 20 years of continuous service with the Employer;

(2) was at least age 50 with at least 10 years of service on the last day of employment; or

(3) was at least age 50 with at least 5 years of service on the last day of employment and has an individual written agreement (referred to hereinafter as an "Employee Agreement") with the Company providing access to retiree health coverage pursuant to this Plan, provided that any and all eligibility requirements set forth in the Employee Agreement are satisfied.

Employees who were employed by the Fort Worth Customer Operations Center on the last day of employment are not eligible for benefits under this Plan.

PL - COMP 000031

Each Retiree, within 31 days of the date he or she loses coverage as an active employee participating in a group health plan maintained by the Employer, may elect to participate in the Plan and may include a spouse and/or Dependent. Each Annual Election Time thereafter, a Participant will be allowed to change providers under the Plan (as set forth in Section 9, below, and only to the same or lower level of Plan coverage). In order to accomplish any of these coverage changes, the Participant must complete the documentation required by the Plan Administrator and submit such documentation before the expiration of Annual Election Time. Anything in this Plan to the contrary notwithstanding, however, the following rules apply to an Employee described in Section 3.(3) (referred to hereinafter as a "Section 3.1(3) Retiree"): (i) a Section 3.1(3) Retiree must make an election to participate in the Plan within 30 days of his/her separation from service; and (ii) any benefits paid on behalf of a Section 3.1(3) Retiree shall be made on or before the last day of the calendar year following the calendar year in which a Plan expense is incurred.

Further, a Dependent of a Participant is eligible for coverage under this Plan if the Participant elects coverage for the Dependent within 31 days of a special enrollment event; provided, however, that if the special enrollment event is the acquisition of a new Dependent due to birth, legal guardianship, adoption or placement for adoption, the Participant must elect coverage within 60 days of such special enrollment event. The following qualify as "special enrollment events" for purposes of this Plan: (i) a Dependent's loss of other coverage, if the Dependent's coverage under this Plan was declined during the Participant's initial election period because the Dependent had other coverage; (ii) acquisition of a new Dependent due to marriage, birth, legal guardianship or adoption of a child or placement for adoption. A Dependent's effective date of participation in this Plan is (i) in the case of acquisition of a new Dependent due to marriage, the date of the marriage; (ii) in the case of acquisition of a new Dependent due to birth, legal guardianship, adoption or placement for adoption, the date of birth, guardianship, adoption or placement for adoption; and (iii) in the case of a Dependent's loss of other coverage, the date of the loss of other coverage.

Each child for whom a Qualified Medical Support Order is approved by the Employer becomes eligible to participate upon the date that approval is issued.

The terms of the policy or certificate will determine the effective date and termination date of the Participant's and/or Dependent's coverage.

## 3.2    Evidence of Insurability

During a Retiree's initial election period, the Retiree may choose coverage without providing evidence of insurability.

The terms and provisions of the policy or certificate will determine the type and amount of coverage available.

6

### 3.3    Cessation of Participation

A Participant will cease to be a Participant as of the earliest of

(1)    the date on which the Plan terminates;

(2)    the date on which he or she ceases to be a Retiree who is eligible to participate under Section 3.1;

(3)    the date on which a Qualified Medical Support Order ceases to be effective or allows termination of participation, whichever occurs first; or

(4)    the first of the month following the date on which a service fee or premium payment is due and unpaid;

(5)    the Participant's death.

### 3.4    Reinstatement of Former Participant

A former Participant returning from a uniformed services tour of duty will be reinstated to all benefits or coverage's provided under the Plan according to the requirements of USERRA), if the facts of the former Participant's departure, tour and reapplication also meet the requirements of USERRA.  For purposes of the preceding sentence, the term Uniformed Services shall have the meaning given to it under USERRA.

### 3.5    No Double Coverage

Retirees who are married to each other or are each other's Domestic Partner Dependents at the time of termination of employment can each be eligible to participate in the Plan.  Each Retiree spouse/Domestic Partner can elect separate Plan coverage as a Retiree.  Alternatively, one of the spouse/Domestic Partner Retirees can elect to be covered as a Retiree with the other spouse/Domestic Partner being covered as a Dependent of the Retiree.  However, a Retiree cannot be covered by this Plan (or any other group medical plan sponsored by the Employer, including plans for active Employees) as *both* a Retiree and a Dependent.  Similarly, a Dependent child can only be covered by the Plan through one Retiree.  No individual will be considered a Dependent of more than one Retiree/Employee for purposes of Plan coverage.

PL - COMP 000033

**SECTION 4**       **DESCRIPTION OF OPTIONAL BENEFITS**

**4.1**   **Benefit Options**

Each Participant may choose under this Plan to receive coverage under one of the group health insurance plans listed in Section 9

**4.2**   **Description of Optional Benefits**

The coverage offered under the Plan are described in the certificates, handbooks and guidebooks provided by the Insurer or Third Party Administrator.

**4.3**   **Election Procedure**

At retirement, the Employer shall provide one or more written election forms to each Participant. Each Participant's election shall be effective as of the first day of the next month. Each election form must be completed and returned to the Employer on or before such date as the Plan Administrator shall specify, which date shall be no later than the beginning of the first period for which the Participant's election will apply.

**4.4**   **Failure to Return Election Forms**

A Participant's failure to return a completed election form under Section 4.4 to the Employer on or before the specified due date, shall constitute an election not to receive this insurance coverage.

**4.5**   **Maximum Elective Contributions**

The maximum amount of elective contributions under the Plan for any Participant shall be the amount set forth on the Enrollment Form; provided, however, that in no event shall a Section 3.1(3) Retiree be entitled to make such elective contributions from a health reimbursement arrangement account balance unless he or she is otherwise eligible for benefits under such arrangement pursuant to its generally applicable eligibility requirements and otherwise meets the participation requirements of Section 3.1(2).

**4.6.**   **Maternity Stay Benefits**

The Newborns' and Mothers' Health Protection Act of 1996 provides that no group health plan or health insurer that provides hospitalization benefits in connection with childbirth may restrict the period of hospitalization after birth for which benefits are payable to less than 48 hours for a vaginal delivery and 96 hours for a cesarean delivery.

8

Exception: The minimum length of stay provisions shall not apply in any case in which the decision to discharge the mother or the newborn child prior to these stated minimums is made by an attending provider in consultation with the mother.

### 4.7 Breast Reconstruction Incident to Mastectomy

The Women's Health and Cancer Rights Act of 1998 states that health plans that provide mastectomy coverage must also provide coverage for reconstructive surgery, including:

(1) reconstruction of the breast that has been removed;

(2) reconstruction of the other breast for a symmetrical appearance; and

(3) prostheses and treatment of an physical complications of the mastectomy.

Coverage will be provided in a manner determined in consultation with the attending physician and the patient.

---

## SECTION 5                    FUNDING

---

### 5.1 Premium

For Participants, the Employer shall contribute toward the cost of the coverage elected under this Plan according to the Enrollment Form. The foregoing notwithstanding, however, in the case of a Section 3.1(3) Retiree, he or she shall pay the entire cost of coverage elected; in the case of self-insured coverage, the cost shall be determined by the Company and shall be equal to the greater of (i) the cost of coverage for other Participants who are eligible under Section 3.1(2) and who elect self-insured coverage, and (ii) the full cost of coverage under the Plan determined pursuant to COBRA for Participants eligible under Section 3.1(2) and who elect self-insured coverage. In no event shall a Section 3.1(3) Retiree be entitled to any amounts available under a health reimbursement arrangement sponsored by the Company; provided, however, that he or she shall be entitled to such amounts if he or she otherwise meets the generally applicable eligibility requirements for benefits under such arrangement and otherwise meets the participation requirements of Section 3.1(2).

Each Participant enrolled in the Plan under COBRA is fully responsible for the cost of his/her medical care coverage.

Non-payment of a required premium by a Participant will cause termination of the insurance coverage.

9

PL - COMP 000035

## SECTION 6       ADMINISTRATION OF PLAN

### 6.1    Plan Administrator

The administration of the Plan shall be under the supervision of the Plan Administrator as indicated in the resolution adopted from time to time by the Board of Directors of the Employer. It shall be a principal duty of the Plan Administrator to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them. The Plan Administrator will have full power to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

(1)   To make determinations regarding initial and continuing eligibility to participate in the Plan or to receive benefits or the amount of benefits available under this Plan;

(2)   To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan;

(3)   To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan;

(4)   To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

(5)   To appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan; and

(6)   To allocate and delegate its responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan, any such allocation, delegation or designation to be in writing.

### 6.2    Explanation of Benefits

The Insurer or Third Party Administrator shall submit to each Participant receiving Benefits under the Plan during a Plan Year an explanation of the amount of Benefits received by such Participant.

10

**6.3   Examination of Records**

The Plan Administrator will make available to each Participant such of its records under the Plan as pertain to the Participant, for examination at reasonable times during normal business hours.

**6.4   Reliance on Tables, etc.**

In administering the Plan, the Plan Administrator will be entitled to the extent permitted by law to rely conclusively on all tables, valuations, certificates, opinions and reports which are furnished by, or in accordance with the instructions of, the third-party administrators of the Plan or by accountants, counsel or other experts employed or engaged by the Administrator.

**6.5   Error in Fact**

The Plan Administrator may take appropriate actions to correct an administrative error that can be demonstrated to a reasonable degree of certainty to be an action that is not consistent with all relevant facts under the circumstances when discovered by the Plan Administrator.

**6.6   Nondiscriminatory Exercise of Authority**

Whenever, in the administration of the Plan, any discretionary action by the Plan Administrator is required, the Plan Administrator shall exercise its authority in a nondiscriminatory manner so that all persons similarly situated will receive substantially the same treatment.

**6.7   Indemnification of Administrator**

The Employer agrees to indemnify and to defend to the fullest extent permitted by law any employee serving as the Plan Administrator or as a member of a committee designated as Administrator (including any employee or former employee who formerly served as Plan Administrator or as a member of such committee) against all liabilities, damages, costs and expenses (including attorneys' fees and amounts paid in settlement of any claims approved by the Employer) occasioned by any act or omission to act in connection with the Plan, if such act or omission is in good faith.

**6.8   No Guarantee of Tax Consequences**

No commitment or guarantee is made that any amounts paid to or for the benefit of a Participant under the Plan will be excludable from the Participant's gross income for federal or state income tax purposes, or that any other federal or state tax treatment will

11

PL - COMP 000037

apply to or be available to any Participant. It shall be the obligation of each Participant to determine whether each payment under the Plan is excludable from the Participant's gross income for federal and state income tax purposes, and to notify the Employer if the Participant has reason to believe that any such payment is not so excludable. Further, nothing in this document or any other document provided to Participants should be regarded as tax or legal advice to Participants.

### 6.9   Information to be Furnished

Participants shall provide the Employer and Plan Administrator with such information and evidence, and shall sign such documents, as may reasonably be requested from time to time for the purpose of administration of the Plan.

### 6.10   Nonassiguability of Rights

A Participant's right to receive any reimbursement or benefit under the Plan shall not be assigned or attached by any other method, and will not be subject to being taken by a Participant's creditors by any process whatsoever. And any attempt to assign this benefit will not be recognized, except to such extent as may be required by law.

### 6.11   Coordination of Benefits

If a Participant or Dependent is covered under more than one group plan as defined below, including this Plan, benefits will be coordinated. The benefits payable under this Plan for any Claim Determination Period, will be either its regular benefits or reduced benefits which, when added to the benefits of the other plan, may equal 100% of the Allowable Expenses defined below:

For purposes of this Section 6.11, the term "group plan" includes any plan under which medical benefits or services are provided by:

(1)   Group, blanket or franchise insurance coverage;

(2)   Any group hospital service prepayment, group medical service prepayment, group practice or other group prepayment coverage;

(3)   Group coverage under labor-management trusteed plans, union welfare plans, employer organization plans or employee benefits plans;

(4)   Coverage under Medicare and any other governmental program that the Participant or Dependent is liable for payment, except state-sponsored medical assistance programs and TRICARE, in which case this Plan pays primary;

(5)   Coverage provided through a school or other educational institution;

12

PL - COMP 000038

(6)     Coverage under any Health Maintenance Organization (HMO);

(7)     Coverage provided by no-fault auto insurance, by whatever name it is called, when not prohibited by law.

<u>Order of Benefit Determination</u>

When a claim is made, the primary plan pays its benefits without regard to any other plans. The secondary plan adjusts its benefits so that the total benefits paid by both plans will not exceed 100% of the Allowable Expenses. Neither plan pays more than it would without the Coordination of Benefits provision.

A plan without a Coordination of Benefits provision is always the primary plan. If all plans have a Coordination of Benefits provision:

(1)     The plan covering the person directly, rather than as an employee's dependent, is primary and the other plans are secondary. In particular, if the person is enrolled in Medicare Part A, Part B or both, that Medicare coverage will be primary.

(2)     Dependent children of parents not separated or divorced, or unmarried parents living together. The plan covering the parent whose birthday falls earlier in the year pays first. The plan covering the parent whose birthday falls later in the year pays second.

        However, if the other plan does not have this rule but instead has a rule based upon the gender of the parent, and if, as a result, the plans do not agree on the order of benefits, the rule in the other plan will determine the order of benefits.

(3)     Dependent children of separated or divorced parents, or unmarried parent not living together:   When parents are separated or divorced or unmarried and not living together, neither the male/female nor the birthday rules apply.  Instead:

        a.     The plan of the parent with custody pays first;

        b.     The plan of the spouse of the parent with custody (the step-parent) pays next;

        c.     The plan of the parent without custody pays next; and

        d.     The plan of the spouse of the non-custodial parent pays last.

(4)     Active/Laid-Off or Retired Employees:  The plan which covers that person as an active employee (or as that employee's dependent) determines its benefits before the Plan which covers that person as a laid-off or retired employee (or as that employee's dependent).  If the Plan which covers that person has not adopted this

13

rule, and if, as a result, the Plans do not agree on the order of benefits, this rule (4) will not apply.

(5)    If a person whose coverage is provided under a right of continuation pursuant to state or federal law (i.e. COBRA) is also covered under another plan, the plan covering the person as an employee, member, subscriber, or retiree (or that person's dependent) is primary and the continuation coverage is secondary. If the other plan does not have this rule, and if, as a result, the plans do not agree on the order of benefits, this rule (5) is ignored.

(6)    If none of the above rules determines the order of benefits, the plan covering a person longer pays first. The plan covering that person for the shorter time pays second.

Coordination of Benefits may operate to reduce the total amount of benefits otherwise payable during any Claim Determination Period with respect to a Participant or Dependent under this Plan. When the benefits of this Plan are reduced, each benefit is reduced by the amount paid by the primary plan(s) The reduced amount is then charged against any applicable benefit limit of this Plan.

When a group plan provides benefits in the form of services rather than cash payments, the reasonable cash value of each service rendered will be considered to be both an Allowable Expense and a benefit paid.

<u>Recovery</u>

If the amount of the payment made by this Plan is more than it should have been, the Plan Administrator has the right to recover the excess from one or more of the following:

(1)    The person this Plan has paid or for whom it has paid;

(2)    Providers of care;

(3)    Insurance companies; or

(4)    Other organizations.

<u>Payment to Other Carriers</u>

Whenever payments, which should have been made under this Plan in accordance with the above provisions, have been made, this Plan will have the right to pay any organization making those payments any amounts it determines to be warranted in order to satisfy the intent of the above provisions. Amounts paid in this manner will be considered to be benefits paid under this Plan and, to the extent of these payments, this Plan will be fully discharged from liability.

14

## SECTION 7        APPEAL PROCEDURE

**7.1    Notification Period**

Decision of a denied payment shall be made by the Insurer or Third Party Administrator within the time periods required under the ERISA claims procedure regulations for urgent care claims, pre-service claims or post-service claims, as applicable.

**7.2    Notification of Declination**

Every Participant who is denied a payment for Benefits shall be provided a written notice setting forth, in a manner calculated to be understood by the Participant, the following:

     (1)    a specific reason or reasons for the denial;

     (2)    specific reference to pertinent Plan or policy provisions upon which the denial is based;

     (3)    a description of any additional material or information necessary for the Participant to establish a right to payment and an explanation of why such material or information is necessary; and

     (4)    an explanation of the Plan's payment review procedure, as set forth below in parts 7.3 and 7.4 hereof.

**7.3    Reasonable Opportunity for Review**

The purpose of the review procedure set forth in this Section is to provide a procedure by which a Participant, under the policy, may have reasonable opportunity to appeal a denial of a payment to the appeals committee for a full and fair review. To accomplish that purpose, the Participant, or the duly authorized representative may:

     (1)    request review upon written application to the Plan Administrator who will acknowledge receipt of the request within ten (10) days;

     (2)    review pertinent Plan documents during the forty five (45) day period following receipt by the Plan Administrator of the written application for a review; and

     (3)    submit issues and comments in writing.

15

PL - COMP 000041

### 7.4 Decision Process

To accomplish the purpose set forth in Section 8.3, within 180 days after receiving the claim denial the Participant or the Participant's duly authorized representative may request a review of the denied claim in writing (an ERISA Appeal) by providing new information or a new interpretation of existing data to the Insurer (if any) or Third Party Administrator (if any) as indicated in the attached Exhibit A.

Upon receipt of all the information necessary to make the determination, decision on review of a denied payment shall be made by the Third Party Administrator or Insurer within

(1)     a reasonable period of time appropriate to the medical circumstances but no later than seventy-two (72) hours for an urgent care claim; or

(2)     a reasonable period of time appropriate to the medical circumstances but no later than thirty (30) days for a pre-service claim; or

(3)     a reasonable period but no later than sixty (60) days for a post-service claim. An ERISA Appeal is a formal written request to the Insurer or Third Party Administrator for a review of the denied claim. An ERISA Appeal does not include a request by the Participant or the Participant's representative to the Employer or Plan Administrator for assistance in a review of a denied claim by the Insurer or Third Party Administrator.

The ERISA Appeal is final and binding and will exhaust the required remedies under the Plan for review of the denied claim.

However, if the appeal pertains to a self funded benefit, a Participant or the Participant's duly authorized representative may, within the first one hundred and eighty (180) days following exhaustion of the ERISA Appeal process, voluntarily request the Plan Administrator to review the claim denial. Decision on review of a denied payment shall be made by the Plan Administrator within sixty (60) days of the receipt of all the information necessary to make a determination. The appeal will be reviewed by an individual or committee of the Plan Administrator that is not subordinate to the individual or committee that made the initial determination. The Participant or the Participant's duly authorized representative may terminate the voluntary appeal process by providing written notice to the Plan Administrator at any time. The Plan Administrator may terminate the voluntary appeal process without making a determination regarding the issues in question in the voluntary appeal immediately upon receipt of formal notice that the Participant or the Participant's duly authorized representative has taken action in state or federal court or other regulatory body.

16

**7.5   Dispute Resolution**

If a dispute arises with respect to any matter under the Plan, the Employer may refrain from taking any other or further action in connection with the matter involved in the controversy until the dispute has been resolved.

---

## SECTION 8                MISCELLANEOUS

---

**8.1   Plan Termination and Changes**

The Employer may amend or terminate the Plan at any time.

**8.2   Plan not an Employment Contract**

This Plan shall not be deemed to constitute an employment contract or to interfere with the right of the Employer to discharge any Employee at any time regardless of the effect which such discharge shall have upon the Employee.

**8.3   Conformity with Governmental Regulation**

This Plan shall be construed and enforced according to the laws of the state to the extent not preempted by any federal law.

**8.4   Confidentiality**

The Plan will not disclose Participants' protected health information, as defined by HIPAA, to the Employer or any other entity except as allowed or required under HIPAA and the regulations thereunder.

The Plan will maintain access to protected health information by Participants and record keeping protocols as required by HIPAA and the regulations thereunder.

To the extent that Plan operations require disclosure of protected health information to the Employer, the Employer will certify to the Plan Administrator that the Employer will:

(1)   Not use or further disclose the protected health information other than as permitted by the Plan;

(2)   Use HIPAA compliant contracts with subcontractors or any other agent to whom the Employer provides protected health information;

17

(3)   Not use or disclose protected health information for employment related actions or in connection with any other employee benefit plan other than "group health plans" as defined for HIPAA;

(4)   Report any use or disclosure of protected health information that is inconsistent with the permitted uses or disclosure;

(5)   Maintain access to protected health information by Participants and government agencies and record keeping protocols as required by HIPAA and the regulations thereunder;

(6)   Restrict access to protected health information to employees with oversight responsibility for claims administration; and

(7)   Maintain a procedure for resolving any compliance issues.

**8.5   Subrogation**

As a condition for receiving benefits under this Plan, Participants agree:

To reimburse the Plan for any such benefits paid or payable to, or on behalf of, the Participant when said benefits are recovered, in any form, regardless of how classified or characterized, from any person, corporation, entity, no-fault carrier, uninsured motorist carrier, underinsured motorist carrier, other insurance policies for funds; and

To refrain from releasing any party, person, corporation, entity, insurance company, insurance policies or funds that may be liable for or obligated to the Participant for the injury or condition without obtaining the Plan's written approval; and

Without limiting the preceding, to subrogate the Plan to any and all claims, causes of action or rights that they have or that may arise against any person, corporation and/or other entity and to any coverage, no-fault coverage, uninsured motorist coverage, underinsured motorist coverage, other insurance policies or funds ("Coverage") for which the Participant claims an entitlement to benefits under this Plan, regardless of how classified or characterized.

In the event a Participant settles, recovers or is reimbursed by any third party or Coverage, the Participant agrees to hold any such funds received in trust for the benefit of the Plan, and to reimburse the Plan for all benefits paid or that will be paid as a result of said injury or condition. The Participant acknowledges that the Plan's subrogation rights shall be considered a first priority claim and shall be paid before any other claims for the Participant as the result of the illness or injury, regardless of whether the Participant is made whole. If the Participant fails to reimburse the Plan for all benefits paid or to be paid, as a result of said injury or condition, out of any recovery or reimbursement received, the Participant will be liable for any and all expenses (whether fees or costs) associated with the Plan's attempt to recover such money from the Participant.

18

The Participant shall execute and return a Subrogation Agreement to the Plan Administrator and shall supply other reasonable information and assistance as requested by the Plan Administrator regarding the claim or potential claim. If the Subrogation Agreement is not executed and returned or if information and assistance is not provided to the Plan Administrator upon request, no benefits will be payable under the Plan with respect to costs incurred in connection with such illness or injury.

If the Participant (or guardian or estate) decides to pursue a third party or any Coverage available to them as a result of the said injury or condition, the Participant agrees to include the Plan's subrogation claim in that action and if there is failure to do so the Plan will be legally presumed to be included in such action or recovery. In the event the Participant decides not to pursue any and all third parties or Coverage the Participant authorizes the Plan to pursue, sue, compromise or settle any such claims in their name, to execute any and all documents necessary to pursue said claims in their name, and agrees to fully cooperate with the Plan in the prosecution of any such claims. The Participant (or guardian or estate) agrees to take no prejudicial actions against the subrogation rights of the Plan or to in any way impede the action taken by the Plan to recover its subrogation claim. Such cooperation shall include a duty to provide information, execute and deliver any acknowledgment and other legal instruments documenting the Plan's subrogation rights, and take such action as requested by the Plan to secure the subrogation rights of the Plan.

The Plan will not pay or be responsible, without its written consent, for any fees or costs associated with a Participant pursuing a claim against any Coverage or third party. The Plan Administrator retains sole and final discretion for interpreting the terms and conditions of the Plan document. The Plan Administrator may amend the Plan in its sole discretion at anytime without notice. This right of subrogation and reimbursement shall bind the Participant's guardian(s), estate, executor, personal representative, and heir(s).

**8.6    Rights of Recovery**

In the event of any overpayment of benefits by this Plan, the Plan will have the right to recover the overpayment. If a Participant is paid a benefit greater than allowed in accordance with the provisions of this Plan, the Participant will be requested to refund the overpayment. If payment is made on behalf of a Participant to a hospital, physician or other provider of health care, and that payment is found to be an overpayment, the Plan will request a refund of the overpayment from the provider first. If the provider does not honor the Plan's request for a refund, the Plan will then request the overpayment from the Participant. If the refund is not received from the provider or Participant, the amount of the overpayment will be deducted from future benefits.

19

PL - COMP 000045

**8.7     Qualified Medical Child Support Orders**

The Plan recognizes qualified medical child support orders (QMCSOs) with respect to covering a Participant's dependent under the Medical Reimbursement Program. That notwithstanding, in order for the Plan to cover a particular dependent pursuant to a QMCSO, the Participant must follow the Plan's QMCSO procedures. Please contact the Employer for a copy of these procedures.

**8.8     ERISA Notice**

Participants in this Plan are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan Participants shall be entitled to:

**Receive Information About the Plan and Benefits**

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all Plan documents, including insurance contracts, and collective bargaining agreements. Participants may also review, without charge, a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor. It is also available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each Participant with a copy of the summary annual report.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of Plan Participants and beneficiaries. No one, including the Employer, a union, or any other person may fire a Participant or otherwise discriminate against a Participant in any way to prevent the Participant from obtaining a welfare benefit or exercising the Participant's rights under ERISA.

20

**Enforce Participants Rights**

If a Participant's claim for a welfare benefit is denied or ignored, in whole or in part, the Participant has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and appeal any denial, all within certain time schedules.

Under ERISA, there are steps Participants can take to enforce the above rights. For instance, if a Participant requests materials from the Plan and does not receive them within 30 days, the Participant may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay the Participant up to $110 a day until the Participant receives the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If a Participant has a claim for benefits which is denied or ignored, in whole or in part, the Participant may file suit in a state or federal court. In addition, if the Participant disagrees with the Plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, the Participant may file suit in Federal Court. If it should happen that Plan fiduciaries misuse the Plan's money, or if the Participant is discriminated against for asserting his/her rights, he/she may seek assistance from the U.S. Department of Labor, or file suit in a federal court. The court will decide who should pay court costs and legal fees. If the Participant is successful, the court may order the person sued to pay these costs and fees. If the Participant loses, the court may order him/her to pay these costs and fees, for example, if it finds the claim to be frivolous.

**Assistance with Participant Questions**

If a Participant has any questions about the Plan, he/she should contact the Plan Administrator. If the Participant has any questions about this statement or about his/her rights under ERISA, or if he/she need assistance in obtaining documents from the Plan Administrator, he/she should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, DC 20210. The Participant may also obtain certain publications about his/her rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

**8.9    Insurance Certificate Controls**

This document is intended to give general information regarding the Plan and its benefits. To the extent that any provision of this document is inconsistent with a provision of the Plan Document/Insurance Certificate, the Plan Document/Insurance Certificate shall control. If a Participant would like a copy of the Plan Document or Insurance Certificate, he/she may request one (free of charge) from the Employer.

21

| SECTION 9 | COVERAGE OPTIONS |
|---|---|

Participants in this Plan have the option of electing one the following coverage options (which the Employer may revise by an Exhibit A attached to this Plan):

- Cigna Choice Fund (CDHP)
- Cigna Open Access Plus (PPO)
- Physicians Plus HMO – Wisconsin
- CIGNA Medicare Carve-Out (available only to participants already enrolled on January 1, 2006)
- CIGNA Medicare Integration (available only to participants already enrolled on January 1, 2006)

**SEE DOCUMENTS PROVIDED BY INSURER OR THIRD PARTY ADMINISTRATOR FOR MORE INFORMATION ON PLAN BENEFITS.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Employer has executed this amended and restated Plan document on the ___1St___ day of October, 2007.

CUNA Mutual Insurance Society

By: _____

John McWilliams, SVP Human Resources

22

PL - COMP 000048

# AMENDMENT
## TO THE
## CUNA MUTUAL GROUP MEDICAL CARE PLAN FOR RETIREES

CUNA Mutual Insurance Society, an Iowa corporation (the "Employer"), hereby amends the CUNA Mutual Group Medical Care Plan for Retirees, Plan #537 (the "Plan"), effective as of the end of business on December 31, 2008, as follows:

1.    **Section 4.5** of the Plan is amended to read as follows:

**4.5    Maximum Elective Contributions**

The maximum amount of elective contributions under the Plan for any Participant shall be the amount set forth on the Enrollment Form. Effective as of the end of business on December 31, 2008, the Employer shall not make any further contributions and eliminate any other subsidies under the Plan for any Participant, except:

    (a) Former represented employees who retired on or after June 1, 2005 and whose employer contributions are based on formulas effective on or after June 1, 2005;

    (b) Active represented employees who retire on or after January 1, 2009 whose employer contributions are based on applicable formulas under existing collective bargaining agreements effective on or after June 1, 2005; and

    (c) Represented employees who retired after April 1, 1983, with respect to sick leave that was converted to a non-cash account. Such non-cash accounts shall continue to be available to those employees.

2.    **Section 5.1** of the Plan is amended to read as follows:

**5.1    Premium**

For Participants, the Employer shall contribute toward the cost of the coverage elected under this Plan according to the Enrollment Form. The foregoing notwithstanding, effective as of the end of business on December 31, 2008, the Employer shall eliminate all contributions and subsidies, including sick leave converted into non-cash accounts and "HRA" balances (also known as Retiree Medical Accounts), except as otherwise provided for the groups described in Section 4.5. Participants shall be responsible for the entire cost of premiums.

Each Participant enrolled in the Plan under COBRA is fully responsible for the cost of his/her medical care coverage.

Non-payment of a required premium by a Participant will cause termination of the insurance coverage.

K:\SJE-Research\CMG_in-house\Welfare\Retiree_health_amd_23Dec2008TBS.doc

PL - COMP 000049

IN WITNESS WHEREOF, the Employer, pursuant to the authority of its Board of Directors, has hereunto caused this Amendment to be executed in its behalf by its undersigned officers on the _29_ day of December, 2008.

CUNA Mutual Insurance Society

MEMBERS Capital Advisors, Inc.

CUNA Mutual General Agency of Texas, Inc.

Stewart Associates Incorporated

CUNA Mutual Business Services, Inc.

By: _____
    J. Scott Mayer
    Chair, Employee Benefit Plan Administration Committee

K:\SJE-Research\CMG_in-house\Welfare\Retiree_health_amd_23Dec2008TBS.doc

PL - COMP 000050

# CUNA MUTUAL INSURANCE SOCIETY

### POST OFFICE BOX 391·(608)238-5851

### MADISON. WISCONSIN 53701

**ROBERT L. WERMUTH**
EXECUTIVE VICE PRESIDENT·ADMINISTRATION

## M E M O R A N D U M

July 9, 1982

**TO:**        Management Employees
          CUNA Mutual Insurance Group

**FROM:**      Robert L. Wermuth
          Executive Vice President

**SUBJECT:**   Policy on Employer Health Insurance
          Contributions for Qualified Management Retirees

Your CUNA Mutual Insurance Group employer has modified its Policy on premium contributions for a Qualified Management Retiree's coverage under the group contract providing insurance for the CUNA Mutual Group Health Plan ("Group Health Contract"). This Memorandum is to inform you about the new Policy on premium contributions. Eligibility for the insurance coverage itself must be determined under the Group Health Contract.

This Policy applies only to Qualified Management Retirees who retire on or after January 1, 1982 and while this Policy continues in effect. It does not affect other retirees, employees or former employees. Retirees who retired previously are governed by any continuing policy which was in effect at the time they retired.

For purposes of this Policy, a Qualified Management Retiree is a CUNA Mutual Insurance Group former employee who continues to be covered under the Group Health Contract and who either:

(1)   retired while:  (a) a management employee entitled to an immediately payable or deferred vested CUNA Mutual Pension Plan benefit, (b) disabled for purposes of the CUNA Mutual Long-Term Disability Plan, and (c) having completed continuous service* of at least five (5) years; or

PL - COMP 000051

(2)   retired or died while a management employee entitled to
an immediately payable CUNA Mutual Pension Plan Benefit
and while fitting within any one of the following age
and minimum years of continuous service* combinations:

| Age and Minimum Years Of Continuous Service* | | Portion of Premium Payable By Former Employer |
|---|---|---|
| Age Bracket | Service | |
| 50 to 54 | 20 Years | 30% |
| 55 to 59 | 15 Years | 40% |
| 60 to 64 | 10 Years | 50% |
| 65 and Over | 5 Years | 60% |

*As determined for purposes of benefit accrual under the
CUNA Mutual Pension Plan.

While this Policy continues in effect, a CUNA Mutual Insurance
Group former employer will make the following contribution toward
payment of the premium for coverage of a Qualified Management
Retiree under the Group Health Contract:

−    first, payment of the percentage of the premium shown
for the Qualified Management Retiree's status in the
table displayed under (2) above, except the percentage
shall be 60% if the Qualified Management Retiree is
eligible under (1) above; and

−    second, payment of the balance of the premium to the
extent of any then available sick leave credit as
determined by multiplying the Qualified Management
Retiree's earned and unused sick leave hours at retirement
by 70% of the Qualified Management Retiree's hourly
salary rate just prior to retirement and thereafter
reducing the resulting dollar credit by each amount the
former employer pays under this sick leave credit
provision.

For purposes of this Policy:  "management employee" refers to any
non-union employee; "coverage of a Qualified Management Retiree"
includes coverage for a spouse, surviving spouse, children and
surviving children to the extent in each case the former employer
would be paying the premium for them if the Qualified Management
Retiree were then its active full-time management employee; and
eligibility as a Qualified Management Retiree under (1) above
shall continue only so long as the disability continues.

If you have any questions about this policy, please contact JoAnn
Malas in the Personnel Department.

RLW/jra

*R. L. Wermuth*

−2−

TOTAL P.02

PL - COMP 000052

# CUNA MUTUAL INSURANCE SOCIETY

POST OFFICE BOX 391·1608/238·5851

MADISON, WISCONSIN 53701

**ROBERT L. WERMUTH**
EXECUTIVE VICE PRESIDENT·ADMINISTRATION

## M E M O R A N D U M

July 9, 1982

TO:       Union Employees
              CUNA Mutual Insurance Group

FROM:     Robert L. Wermuth
              Executive Vice President

SUBJECT:  Policy on Employer Health Insurance
              Contributions for Qualified Retirees

Your CUNA Mutual Insurance Group employer has modified its Policy on premium contributions for a Qualified Retiree's coverage under the group contract providing insurance for the CUNA Mutual Group Health Plan ("Group Health Contract"). This Memorandum is to inform you about the new Policy on premium contributions. Eligibility for the insurance coverage itself must be determined under the Group Health Contract.

This Policy applies only to Qualified Retirees who retire on or after January 1, 1982 and while this Policy continues in effect. It does not affect other retirees, employees or former employees. Retirees who retired previously are governed by any continuing policy which was in effect at the time they retired.

For purposes of this Policy, a Qualified Retiree is a CUNA Mutual Insurance Group former employee who continues to be covered under the Group Health Contract and who either:

    (1)   retired while:  (a) entitled to an immediately payable or deferred vested CUNA Mutual Pension Plan benefit, (b) disabled for purposes of the CUNA Mutual Long-Term Disability Plan, and (c) having completed continuous service* of at least five (5) years; or

(2)   retired or died while an employee entitled to an
immediately payable CUNA Mutual Pension Plan Benefit and
while fitting within any one of the following age and
minimum years of continuous service* combinations:

| Age and Minimum Years Of Continuous Service* | | Portion of Premium Payable By Former Employer |
|---|---|---|
| Age Bracket | Service | |
| 50 to 54 | 20 Years | 30% |
| 55 to 59 | 15 Years | 40% |
| 60 to 64 | 10 Years | 50% |
| 65 and Over | 5 Years | 60% |

*As determined for purposes of benefit accrual under the
CUNA Mutual Pension Plan.

While this Policy continues in effect, a CUNA Mutual Insurance
Group former employer will pay a percentage of the premium for
coverage of a Qualified Retiree under the Group Health Contract,
which percentage shall be that shown for the Qualified Retiree's
status in the table displayed under (2) above, except it shall be
60% if the Qualified Retiree is eligible under (1) above.   For
purposes of this Policy:   "coverage of a Qualified Retiree" includes
coverage for a spouse, surviving spouse, children, and surviving
children to the extent in each case the former employer would be
paying the premium for them if the Qualified Retiree were then its
active full-time employee; and eligibility as a Qualified Retiree
under (1) above shall continue only so long as the disability
continues.

If you have any questions about this policy, please contact JoAnn
Malas in the Personnel Department.

RLW/jra

*C. L. Wiesmuth*

PL - COMP 000054

# Human Resources Memorandum

TO:    Human Resource Benefits Administration
       CUNA Mutual Insurance Group
       Attention:  Patricia Murphy    1B-1

## GROUP HEALTH ELECTION FORM

I elect to continue the CUNA Mutual Group Health coverage family (employee & spouse) plan by paying 60% of the monthly premium. (CUNA Mutual pays 40%.)

                   ✓ Accept                    _____ Reject

Below I have elected the health care plan effective July 1, 1996.

|  | Deductible | Total Premium | Your 60% Share |
|---|---|---|---|
| ✓ | $ 75 deductible | $733.38 | $440.03 |
| _____ | $ 250 deductible | $622.59 | $373.55 |

(If you elect this deductible you may not revert back to the $75 deductible).

| _____ | $1,000 deductible | $561.33 | $336.80 |

(If you elect this deductible you may not revert back to the $75 or $250 deductible)

I understand the premium is subject to change.

Effective July 1, 1996, the premium will be paid from the sick-leave dollar value calculated at retirement in accordance with the administrative ruling dated July 9, 1982.

_6/22/96_
DATE

_John F. Sullivan_

_____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    _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_
Spouse's Social Security Number

L:\DATA\HRD\BENEFITS\NANCYP\RETIREES\GRPHELTH.RET

PL - COMP 000055

# Human Resources Memorandum

TO:          Human Resource Benefits Administration
CUNA Mutual Insurance Group
Attention: Tammy Toso BB-1

## GROUP HEALTH ELECTION FORM

I elect the CUNA Mutual Group Health coverage by paying 60% of the monthly premium. (CUNA Mutual pays 40%). My 60% monthly contribution will be deducted from my estimated sick leave dollar balance, $145,443.08 until it is exhausted. After that time, my premiums will be deducted from my monthly Pension check if I wish to continue coverage.

        X̶ Accept             ____Reject

Below I have elected the health care plan effective December 1, 2001. The following rates and plans include health, dental and vision coverage for me.

| | Deductible | Total Premium | My 60% Share |
|---|---|---|---|
| ____ | $ 75 deductible | $387.39 | $232.43 |
| ____ | $ 250 deductible (If you elect this deductible you may not revert back to the $75 deductible) | $329.36 | $197.61 |
| ____ | $1,000 deductible (If you elect this deductible you may not revert back to the $75 or $250 deductible) | $297.27 | $178.36 |
| ____ | Physicians Plus HMO | $451.91 | $271.14 |
| X̶ | Unity | $368.14 | $220.88 |
| ____ | Group Health Cooperative | $226.39 | $135.83 |

I understand the premium is subject to change.

_11/15/01_             _Thomas O. Olson_
Date                    Thomas O. Olson

PL - COMP 000056

# GROUP HEALTH ELECTION FORM

RETURN TO:     Employee Resource Center
               CUNA Mutual Insurance Group
               Attention: Tammy Toso 5910 3A8

I elect the CUNA Mutual Group Health coverage by paying 44% of the monthly premium. (CUNA Mutual pays 56%). My premium will be deducted from my sick leave dollar balance, $71,838.29, until it is exhausted. After that time, I will be notified how to pay for premium if I wish to continue coverage.

       __X__ Accept           _____ Reject

Below I have elected the health care plan effective <u>February 1, 2008</u>. The following rates and plans include health coverage only for me only.

DENTAL AND VISION ARE NOT INCLUDED IN THE RETIREE HEALTH PLAN.

| | Health Plan | Total Monthly Premium | My 44% Monthly Share |
|---|---|---|---|
| ____ | CIGNA Open Access Plus (PPO) | $765.16 | $336.67 |
| X | Physicians Plus | $623.33 | $274.27 |
| ____ | CIGNA Choice Fund (CDHP) | $637.56 | $280.53 |

I understand the premiums and/or benefits are subject to change.

| | |
|---|---|
| __1/10/08__ | _[signature]_ |
| Date | Paul Specht |

PL - COMP 000057

## GROUP HEALTH ELECTION FORM

RETURN TO:      Employee Resource Center
                CUNA Mutual Insurance Group
                Attention Patricia Murphy 5910 2A12+1

I elect the CUNA Mutual Group Health coverage by paying 50% of the monthly premium.  (CUNA Mutual pays 50%. My 50% monthly contribution will be deducted from my pension check to.

          X   Accept                    ____ Reject

Below I have elected the health care plan effective ~~June~~ *July 9nw* 1, 2004.  The following rates and plans include health and dental coverage for me and my spouse and vision coverage for me only.  Since your spouse is already on Medicare, it is important that he contacts the Social Security office as soon as possible, if he has not already done so, and enrolls in Medicare Parts A and B.  Medicare will be primary for your spouse and CUNA Mutual would be secondary coverage. CUNA Mutual will not pay for charges covered by Medicare whether or not such coverage is in force. Premiums below represent family coverage

| | Deductible | Total Premium | My 50% Share |
|---|---|---|---|
| ____ | $ 75 deductible | $1,150.28 | *619.45 per P. Murphy* ~~$575.14~~ |
| X | $ 250 deductible (If you elect this deductible you may not revert back to the $75 deductible) | $1027.14 | *557.87 per P. Murphy* ~~$513.57~~ |
| ____ | $1,000 deductible (If you elect this deductible you may not revert back to the $75 or $250 deductible) | $954.12 | $477.06 |
| ____ | Physicians Plus | $993.26 | $496.63 |
| ____ | Unity | $1334.74 | $667.37 |

I understand the premiums and/or benefits are subject to change.

_6/7/40_
Date

_Karen Walter Withee_
Karen Withee

# CUNA Mutual Insurance Society and Subsidiaries

**Consolidated Financial Statements**
**As of December 31, 2008 and 2007 and for the**
**Three Years Ended December 31, 2008**
**And Independent Auditors' Report**

PL - COMP 000059

**CUNA MUTUAL INSURANCE SOCIETY AND SUBSIDIARIES**
Consolidated Balance Sheets, continued
December 31, 2008 and 2007
(000s omitted)

| Liabilities and Policyholders' Surplus | | 2008 | | 2007 |
|---|---|---|---|---|
| **Liabilities** | | | | |
| Claim and policy benefit reserves - life and health | $ | 2,533,919 | $ | 2,541,949 |
| Loss and loss adjustment expense reserves - property and casualty | | 499,161 | | 458,702 |
| Policyholder account balances | | 4,168,056 | | 3,896,845 |
| Unearned premiums | | 536,006 | | 503,024 |
| Notes payable | | 100,000 | | 928 |
| Dividends payable to policyholders | | 19,114 | | 18,136 |
| Reinsurance payable | | 68,275 | | 23,420 |
| Federal income taxes payable | | - | | 15,046 |
| Accrued postretirement benefit liability | | 41,390 | | 188,053 |
| Accrued pension liability | | 199,489 | | 83,737 |
| Accounts payable and other liabilities | | 397,443 | | 595,936 |
| Separate account liabilities | | 3,414,109 | | 5,051,272 |
| **Total liabilities** | | 11,976,962 | | 13,377,048 |
| **Commitments and contingent liabilities (Note 11)** | | | | |
| **Minority interest** | | 36,932 | | 28,641 |
| **Policyholders' surplus** | | | | |
| Retained earnings | | 1,804,996 | | 1,953,098 |
| Accumulated other comprehensive loss, net of tax (2008 - ($306,081); 2007 - ($101,013)) | | (600,643) | | (156,849) |
| **Total policyholders' surplus** | | 1,204,353 | | 1,796,249 |
| **Total liabilities and policyholders' surplus** | $ | 13,218,247 | $ | 15,201,938 |

See accompanying notes to consolidated financial statements.

PL - COMP 000060

**CUNA MUTUAL INSURANCE SOCIETY AND SUBSIDIARIES**
Notes to Consolidated Financial Statements
(000s omitted)

loss expectations based on historical experience patterns and current economic trends. Any change in the probable ultimate liabilities, which might arise from new information emerging, is reflected in the consolidated statements of operations in the period the change is determined to be necessary. Such adjustments could possibly be significant.

### Policyholder Account Balances

The Company recognizes a liability at the stated account value for policyholder deposits that are not subject to significant policyholder mortality or longevity risk and for universal life-type policies. The account value equals the sum of the original deposit and accumulated interest, less any withdrawals and expense charges. Average credited rates ranged from 3.4% to 4.3% in 2008 and 2.8% to 7.0% in 2007. Future minimum guaranteed interest rates during the life of the contracts vary from 1.5% to 4.5%.

### Prepaid Commissions

The Company offers mutual funds to credit union members and other investors. Investors purchasing "B" or "C" shares do not pay an upfront sales charge but are subject to higher annual fees and must pay a surrender charge for redemptions during a designated surrender period, currently six years for "B" shares and one year for "C" shares. Commissions paid to the Company's sales representatives are deferred and amortized to expense ratably over the surrender charge period. The Company assesses the recoverability of the prepaid commissions by calculating the undiscounted cash flows expected from future annual fees and surrender charges. An impairment is required if the asset exceeds the expected cash flows. No such impairments were required in the periods presented.

### Reinsurance

Reinsurance premiums, claims and benefits, commission expense reimbursements, and reserves related to reinsured business ceded are accounted for on a basis consistent with those used in accounting for the underlying direct policies that have been ceded and the terms of the reinsurance contracts. Premiums and insurance claims and benefits in the consolidated statements of operations are reported net of the amounts ceded to other companies under such reinsurance contracts. Reinsurance recoverables are recorded as an asset for the portion of benefits paid and insurance reserves that have been ceded. A prepaid reinsurance asset is recorded for the portion of unearned premiums that relate to policies that have been ceded. Any contracts that do not effectively transfer the risk of loss are recorded using the deposit method of accounting.

### Benefit Plans

The Company recognizes costs for its defined benefit pension plans and postretirement benefits on an accrual basis as employees perform services to earn the benefits. Net periodic benefit cost is determined using management estimates and actuarial assumptions to derive service cost, interest cost and expected return on plan assets. Net periodic benefit cost also includes the applicable amortization of any prior service cost (credit) arising from changes in prior years' benefit costs due to plan amendments or initiation of new plans. The Company uses a December 31 measurement date for all pension and other postretirement benefit plans.

PL - COMP 000061

**CUNA MUTUAL INSURANCE SOCIETY AND SUBSIDIARIES**
Notes to Consolidated Financial Statements
(000s omitted)

## 9. Benefit Plans

The Company has noncontributory defined benefit pension plans covering substantially all full time employees other than employees of The CUMIS Group, Ltd., a holding company for the Canadian insurance operations, which is owned 87% by CUNA Mutual, and the employees of Lending Call Center Services, LLC, a 100% owned subsidiary of the Company. Certain employees and directors are also eligible for non-qualified defined benefit plans. Retirement benefits are provided using either a traditional or cash balance formula. The traditional formula provides benefits based on compensation and years of service. The cash balance formula utilizes notional accounts which credit participants with benefits equal to a percentage of eligible pay as well as earnings credits for each account balance. The cash balance formula applies to employees hired after December 31, 2001 for employees not covered under a collective bargaining agreement and September 1, 2005 for employees covered under a collective bargaining agreement and the majority of the benefit obligations relate to the traditional formula. The Company's policy is to fund pension costs as required to meet the minimum funding requirements under the Employee Retirement Income Security Act of 1974. $231,772 and $448,033 of the United States benefit plan assets shown in the table below, at December 31, 2008 and 2007, respectively, are invested in the Ultra Series Fund, a family of mutual funds which is managed by a wholly-owned investment advisor.

The CUMIS Group, Ltd. maintains a noncontributory defined benefit pension plan, which covers substantially all of its employees, and two contributory defined benefit pension plans. Retirement benefits are based on length of service and final average earnings.

The Company has postretirement benefit plans which provide certain medical and life insurance benefits to eligible participants and dependents. The cost of postretirement benefits is recognized over the period the employees perform services to earn the benefits. Effective December 31, 2008 retiree health benefits were eliminated for all non represented employees and those represented employees who had retired prior to June 1, 2005. As discussed in greater detail below, the effect of eliminating these benefits was a pre-tax increase to 2008 income of $121,823.

The measurement date for all benefit plans is December 31.

PL - COMP 000062